**In re Norman Dean OWENS, Debtor.**

**Bankruptcy No. 94–50934.**

United States Bankruptcy Court, E.D. Kentucky, Lexington Division.

Dec. 12, 1996.

**521**

W. Thomas Bunch, Lexington, KY, for Debtor.

Elizabeth H. Brittain, Lexington, KY, for U.S. Trustee.

David E. Middleton, Asst. U.S. Atty., Lexington, KY, for U.S. IRS.

James A. Philpott, Lexington, KY, for Swettenham Stud.

Harvie B. Wilkinson, Lexington, KY, for Michael Cavey, DVM and Mark Glyer.

### MEMORANDUM OPINION

JOE LEE, Chief Judge.

This case is before the court on the joint motion of the debtor and the disbursing agent under the debtor's confirmed chapter 11 plan for an order determining they are not obligated to resume quarterly payments to the United States Trustee as mandated by recent amendments to title 28 U.S.C. § 1930(a)(6).

## FINDINGS OF FACT:

The debtor filed an individual petition for relief under chapter 11 of the Bankruptcy Code on June 23, 1994. The debtor's chapter 11 plan was confirmed on July 14, 1995. Pursuant to title 28 U.S.C. § 1930(a)(6), as the statute then read, the debtor's obligation to make quarterly payments to the United States Trustee ceased upon confirmation of the chapter 11 plan.

The debtor's confirmed chapter 11 plan is somewhat like a chapter 13 plan in that it provides for distributions to creditors by a disbursing agent over a period of five years. For this reason, inter alia, the debtor's case was still pending on January 6, 1996 and January 26, 1996 when Congress, by amendment of title 28 U.S.C. § 1930(a)(6), required debtors in pending chapter 11 cases to resume quarterly payments to the U.S. Trustee computed on disbursements made after confirmation of the plan.

Prior to bankruptcy the debtor participated in the thoroughbred horse business. Between 1974 and 1992 he and his brother, Phil T. Owens, owned and operated American International Bloodstock Agency, Inc. This agency brokered the sale of interests in thoroughbred horses, stallion shares, and breeding seasons. The agency also represented owners as consignee of thoroughbred horses sold at Keeneland and Fasig–Tipton sales. In addition the debtor appraised thoroughbred horses for sellers or buyers.

The debtor also boarded horses at Providence Place, a farm owned by Providence Place, Inc., a corporate entity of which he was the sole or principal shareholder. This 28.5–acre farm with an 8,000 square foot residence was sold in March 1994 by Providence Place, Inc. to Intrepid Investments, Inc. for the assumption of mortgages thereon totaling $1,081,000.00. The sale was consummated approximately three months prior to the commencement of the debtor's chapter 11 case.

Intrepid Investments, Inc. is a corporate entity whose shareholders are Thomas K. Snoddy, the debtor's CPA, and F.Y.I. Investments, Inc. Profit Sharing Plan. The debtor had rolled over a $350,000 IRA into this

profit sharing plan and the plan used this sum to purchase 35% of the stock of Intrepid Investments, Inc. The other 65% of the stock is owned by the debtor's CPA Snoddy. The amount paid by Snoddy for his shares of stock is not apparent from the record.

Upon receipt of the $350,000 from F.Y.I. Investments Profit Sharing Plan for the purchase of 35% of its stock, Intrepid Investments loaned the $350,000 to Providence Place, Inc., which in turn used the funds to pay its debts and for operating expenses. For example, Providence Place, Inc. paid Intrepid Investments, Inc. $3,922.13 as reimbursement for property taxes and $100,000 for rent. Apparently Providence Place, Inc. the seller, continued its occupancy of Providence Place farm by renting the farm from the new owner, Intrepid Investments, Inc. Presumably, the $100,000 was a prepayment of rent and the rent money was used by Intrepid Investments, Inc. to service the mortgage indebtedness on the farm which Intrepid had assumed.

Subsequently, Thomas K. Snoddy, the debtor's CPA, formed another Kentucky corporation, Equine Management Consultants, Inc., which is wholly owned by Snoddy. This new corporation has replaced Providence Place, Inc. as lessee of Providence Place farm. It is not clear whether the new lessee has benefitted monetarily from the rent prepaid by Providence Place, Inc.

On June 1, 1994, approximately three weeks prior to the June 23, 1994 commencement date of his chapter 11 case, the debtor, who throughout this corporate juggling scenario has continued to occupy the residence on Providence Place farm, entered into an employment agreement with the farm's new lessee, Equine Management Consultants, Inc. Although the employment agreement is silent on the issue, the debtor's occupancy of the residence on Providence Place farm rent free appears to be a form of compensation. The debtor's budget (Schedule I to the chapter 11 petition) makes no allowance for payment of rent. Under the terms of the employment agreement the debtor is to receive an annual salary of $36,000 plus an annual bonus based on the before-tax profit earned by Equine Management Consultants, Inc.

from managing the equine assets of the debtor. It seems obvious that under this arrangement the debtor continues to manage his equine assets cloaked as an employee of Equine Management Consultants, Inc.

The debtor's plan divides his assets into two categories—"Business Assets" and "Other Assets."

The debtor's "Business Assets," defined generally to include breeding rights, seasons, shares and ownership interest in two stallions, as listed in Schedule B to the chapter 11 petition, are to be managed by Equine Management Consultants, Inc., the debtor's employer, under the terms of a Management Agreement incorporated by reference as part of the debtor's plan. See Exhibits No. 22 and 24 to Debtor's Amended Disclosure Statement. Equine Management Consultants, Inc. is to receive a commission of 5% of the gross income from management of the equine assets. This may be the income source from which the debtor's annual salary and any annual bonus is to be paid. It is not clear how the debtor can receive a salary or bonus otherwise because Equine Management Consultants, Inc. is entitled to only 5% of such profits. Surely the debtor cannot contract with Equine Management Consultants, Inc. to receive a bonus out of profits that already belong to the debtor and in turn to the debtor's creditors.

Under the debtor's plan the "Other Assets" of the debtor, with the exception of some household furnishings determined to be exempt, are to be liquidated and the net proceeds of liquidation are to be turned over to the disbursing agent for distribution to creditors in accordance with the plan.

The debtor's art work valued at $77,120.00 and bank stock valued at $8,812.50 and household furnishings determined to be nonexempt were to be sold at public auction within 60 days after confirmation of the plan and the net proceeds of sale turned over to the disbursing agent. Under the plan the disbursing agent, who is the debtor's attorney, is to file a report of receipts and disbursements annually. More than a year has passed since confirmation of the plan and the

disbursing agent has not filed the required report.

The plan assigns to the creditors' committee for collection the debtor's accounts receivable in the amount of $1,330,355 and potential preference claims in the amount of $181,430.00. There is no indication in the record that the committee is pursuing collection of the accounts receivable or recovery of any of the alleged preferential payments to creditors.

Under the plan the debtor is to pay to the disbursing agent $1,500 per quarter or $500 per month from the debtor's salary for a period of 60 months and is to turn over to the disbursing agent any bonuses the debtor receives during this period from Equine Management Consultants, Inc. as additional compensation for management of the debtor's equine assets. And, as the court has previously observed, the net profit from management of the equine assets should be turned over to the disbursing agent as well. Because the disbursing agent has not fulfilled his reporting duties the court does not know whether the debtor is performing in conformity with the plan.

Apparently creditors were persuaded to accept the debtor's plan because the farm owned by Providence Place, Inc., the corporation wholly owned or controlled by the debtor, was encumbered by mortgages in excess of its value; because the $350,000 which the debtor rolled over from an IRA into the F.Y.I. Investments, Inc. Profit Sharing Plan was possibly exempt from the claims of creditors; and because the plan projects net earnings of $500,000 from management of the debtor's equine assets during the 5–year plan period (Part VI A. of Debtor's Amended Disclosure Statement), whereas the liquidation value of the equine assets ranges between $155,375 and $289,375. See Ex. No. 21 to Debtor's Amended Disclosure Statement.

The debtor, by counsel, contends there is no income available from which he can resume payment of U.S. Trustee quarterly fees. His disposable income ($500 per month) is committed to funding the plan; his bonus earnings, if any, are committed to funding the plan. Therefore, according to counsel, any quarterly payments retroactive to January 27, 1996 and in the future during the 5–year period of the plan will have to be deducted from monies the confirmed plan commits to payment of the claims of creditors dealt with by the plan.

Prior to advent of the present controversy over payment of quarterly fees the U.S. Trustee's office involvement in this case has been minimal. A representative of the U.S. Trustee's office presided at the § 341 meeting on July 27, 1994. The following day the U.S. Trustee's office filed a notice of appointment of a 5–member creditors' committee. Some members of the committee are represented by counsel, but the committee has not employed counsel. There is no indication in the record that the committee as assignee is pursuing collection of accounts receivable or avoidance of preferences as authorized by the confirmed plan. The duties of the United States Trustee include monitoring the disclosure statement, plan and the creditors' committee in a chapter 11 case. There is no indication of such monitoring in this case.

The debtor did not list the United States of America as a creditor. According to the Amended Disclosure Statement approved by the court, at the time of submission of the Amended Disclosure Statement the debtor did not owe any taxes. Prior to confirmation of the plan the United States of America Internal Revenue Service filed a claim (claim no. 43 filed April 27, 1995) for estimated income taxes owed by the debtor for the calendar years 1991, 1992, 1993 and 1994. The claim estimates the taxes due as $5,000 for each of those years or a total of $20,000. The record indicates the debtor may now have filed returns and paid any taxes due for the calendar years 1991, 1992 and 1993. On June 24, 1996 the U.S. IRS filed a motion for an order requiring the debtor to file U.S. Individual Income Tax Returns for the calendar years ended December 31, 1994 and December 31, 1995. Pursuant to an agreed order entered on November 19, 1996 the time within which the debtor must file these returns has been extended until January 10, 1997. Consequently, the court cannot discern from the record whether the United States was a creditor of the debtor at the

time of confirmation of the plan. The U.S. IRS did not object to confirmation of the plan. However, the record indicates the IRS did not receive notice of the hearing on confirmation of the plan or a copy of the order confirming the plan.

## CONCLUSIONS OF LAW:

The debtor and the debtor's attorney, in his capacity as disbursing agent under the debtor's plan, submit (1) that the order of July 14, 1995 confirming the debtor's chapter 11 plan is a judgment that fixes the rights of the debtor and creditors under the plan, (2) that the amendments to title 28 U.S.C. § 1930(a)(6) reimposing quarterly fees payable to the United States Trustee computed on all disbursements made by the debtor after January 27, 1996 subvert and modify the judgment of the court by diverting to the United States Trustee monies that are committed under the plan to the payment of the claims of creditors, and (3) that this legislative tampering with the judgment of the bankruptcy court is unconstitutional under the separation of powers doctrine inherent in the U.S. Constitution. *Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995).

The court agrees that an order confirming a chapter 11 plan has the force and effect of a judgment to the extent provided by title 11 U.S.C. § 1141. Nevertheless, on the facts of this case, the court doubts that the debtor and the disbursing agent have standing to raise the constitutional issue presented. As a result of confirmation of the plan the debtor no longer occupies the status of debtor in possession/trustee representative of the estate and the disbursing agent, who is the debtor's attorney of record, obviously cannot litigate in behalf of creditors. As previously noted, the creditors' committee is quiescent. It seems unlikely that the U.S. Trustee as monitor will urge the committee to contest the entitlement of the U.S. Trustee to the quarterly fees the U.S. Trustee seeks to collect. Thus, the U.S. Trustee is in a conflict of interest predicament as well.

Nevertheless, this is a constitutional issue that must be raised by creditors, the only parties in interest who may be adversely affected by Congress' reimposition of quarterly U.S. Trustee fees.

Under attack is the constitutionality of title 28 U.S.C. § 1930(a)(6) as finally amended by Public Law 104–208 (H.R. 3610) on September 30, 1996, the omnibus Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act for programs, projects or activities of these departments and agencies for the fiscal year ending September 30, 1997. This Act supersedes, expands and clarifies a previous amendment to 28 U.S.C. § 1930(a)(6) by the 104th Congress, as hereinafter discussed.

Congressional funding of these government agencies for the previous fiscal year ending September 30, 1996 had been erratic, resulting in a shutdown of some activities, including the U.S. Trustee program.

During the chaos over funding of these agencies a House–Senate Conference Committee concurred in a Report on H.R. 2076 which was filed in the House on December 4, 1995, House Report 104–378, and was adopted by the House on December 6, 1995.

Section 111 of this Conference Report proposed amendment of title 28 U.S.C. § 1930(a)(6) to delete therefrom the words "a plan is confirmed or." As amended the statute would read—

28 U.S.C. § 1930.

§ 1930. Bankruptcy fees.

(a) Notwithstanding section 1915 of this title, the parties commencing a case under title 11 shall pay to the clerk of the court the following filing fees:

. . . . .

(6) In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until [a plan is confirmed or] the case is converted or dismissed, whichever occurs first. The fee shall be $250 for each quarter in which disbursements total less than $15,000; $500 for each quarter in which disbursements total $15,000 or more but less than $150,000; $1,250 for each quarter in which

disbursements total $150,000 or more but less than $300,000; $3,750 for each quarter in which disbursements total $300,000 or more but less than $3,000,000; $5,000 for each quarter in which disbursements total $3,000,000 or more. The fee shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed.

The Conference Report explained the effect of the amendment as follows. In section 111 the conferees agreed to extend the quarterly fee payments to include the period from when a reorganization plan is confirmed until the case is converted or dismissed.

The Conference Report also proposed amendments to title 28 U.S.C. § 589a(b)(5) and § 589(f) which specify the allocation of fees collected by the United States Trustees between the Treasury and the United States Trustee System Fund. The Fund would receive 60 per centum of the fees collected under § 1930(a)(6) until a reorganization plan is confirmed and 100 percent of the fees collected after a reorganization plan is confirmed.

The agreement represented by the Conference Report provided $102,191,000 for funding of the United States Trustee Program for the fiscal year ending September 30, 1996. The report estimated that approximately $44,191,000 of the funding for the program would be derived from offsetting collections under title 28 U.S.C. §§ 1930(a)(6) and 589, amended as recommended by the report.

The House Report containing the foregoing recommended amendments was adopted by reference by section 101(a) of Public law 104–91, a continuing resolution that provided temporary funding for the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies signed into law on January 6, 1996. There appeared to be some doubt as to whether this procedure had the effect of enacting the recommended amendments to title 28 U.S.C. §§ 1930(a)(6) and 589 into law.

Shortly after the enactment of the foregoing temporary funding measure Congress enacted Public Law 104–99, known as The Balanced Budget Down Payment Act of 1996, which, inter alia, provided funding for the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies for the fiscal year ending September 30, 1996. Section 211 of Public Law 104–99 amended section 101(a) of Public Law 104–91 to provide that the General Provisions for the Department of Justice included in House Report 104–384 are hereby enacted into law. This had the effect of effectuating the amendments to title 28 U.S.C. §§ 1930(a)(6) and 589.

Neither of the foregoing funding enactments specified whether the quarterly fee payments reimposed thereby were payable retroactively from the date of confirmation of plans in chapter 11 cases that were pending. The uncertainty over the retroactive application of the amendment to § 1930(a)(6) generated a good bit of litigation and case law which is not particularly helpful in resolving the issue before the court.

The retroactivity question was resolved by Public Law 104–208, signed into law on September 30, 1996, which as noted appropriates funds for the programs, projects and activities of the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies for the fiscal year ending September 30, 1997. Section 109(d) of this act makes clear that the quarterly fees in pending chapter 11 cases in which plans have been confirmed are reimposed only on disbursements made by debtors in such cases from and after January 27, 1996.

Section 109(a) of Public Law 104–208 further amended title 28 U.S.C. § 1930(a)(6) to increase the quarterly fees payable to the United States Trustee. This was accomplished by revising and expanding from five to ten the numerical categories of disbursements on which the fees are computed and by substantially increasing the fees on disbursements in excess of two million dollars.

Unfortunately, in enacting the foregoing series of amendments to title 28 U.S.C. § 1930(a)(6) Congress did not reconcile these amendments with § 1930(a) or the Bankruptcy Code.

For example, the introductory language in § 1930(a) indicates that fees are to be paid by "the parties commencing a case under

title 11." Surely a question will arise as to who is responsible for payment of quarterly fees if the confirmed plan provides for transfer of all of the assets of the debtor to a new owner.

Moreover, title 11 U.S.C. § 507(a)(1) denominates as a first priority administrative expense any fees and charges assessed against a *bankruptcy estate* under chapter 123 of title 28, United States Code, the chapter in which § 1930 appears.

Title 11 U.S.C. § 1129(a)(9)(A) mandates that a chapter 11 plan may not be confirmed unless the plan provides for payment of administrative expenses of a kind specified in section 507(a)(1) in cash as of the effective date of the plan. The effective date of the plan in this case was eleven days after entry of the order confirming the plan.

Obviously, there may be inconsistency between title 11 U.S.C. § 1930(a)(6), as now amended, which imposes quarterly fee payments computed on disbursements made after the effective date of a confirmed chapter 11 plan, and title 11 U.S.C. § 1129(a)(9)(A) which requires such fees to be paid in cash as of the effective date of the plan.

■ Perhaps this inconsistency is resolved by the fact that quarterly U.S. Trustee fees computed on disbursements made after the effective date of confirmation of the plan do not enjoy first priority administrative expense status because they are no longer "fees and charges assessed against the estate." Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests property of the estate in the debtor, 11 U.S.C. § 1141(b), at which time the bankruptcy estate is dissolved.

After confirmation of a plan the rights of creditors in property dealt with by the plan are fixed by the plan or the order confirming the plan. 11 U.S.C. § 1141(c).[1]

The quarterly fee which a chapter 11 debtor is obligated to pay to the U.S. Trustee is computed on "disbursements." This language, which apparently permits calculation of the fee on disbursements of any nature,

differs from the language of title 11 U.S.C. § 326, under which the fee of a chapter 7 or 11 trustee is computed on disbursements to "parties in interest, excluding the debtor." Thus, under the language of § 1930(a)(6) the U.S. Trustee's fee may be computed on all disbursements, including disbursements for ordinary household or business expenses.

Under § 1930(a)(6) the chapter 11 debtor must continue to pay quarterly fees to the United States Trustee until the case is converted or dismissed. Ordinarily chapter 11 cases are converted to cases under chapter 7 or dismissed only when the debtor is unable to obtain confirmation of a plan. Chapter 11 cases in which a plan has been confirmed often remain pending thereafter for the purpose of allowing administrative expenses or resolving disputed claims or pendent litigation. After such issues are resolved the case is closed. The U.S. Trustee seems to concede that a debtor's obligation to pay quarterly fees terminates once the case is closed, although the statute is silent in that respect. This may be a reasonable interpretation of the statute if the quarterly fee payable to the United States Trustee is viewed as a "user fee," a fee for using the bankruptcy system; it may not be an appropriate interpretation of the statute if Congress intended this charge to continue ad infinitum as some courts have suggested.

It is argued that because the debtor must now resume payment of quarterly U.S. Trustee fees there will be less money available for distribution on the claims of creditors with the result that the reimposition of these fees is an incursion on the judgment (the order confirming the plan) in favor of creditors dealt with by the plan. Thus, it is postulated, the reimposition of these fees violates the separation of powers doctrine.

■ As suggested at the outset of this opinion, the court is not persuaded that either the debtor or the disbursing agent have standing to raise this issue in behalf of creditors who may receive less on their claims as a result of the reimposition of quarterly U.S.

---

1. In view of the fact the debtor's plan is largely a liquidation plan and the individual debtor has not continued in business but rather is now an employee, the order of confirmation may not operate as a discharge of the debtor in this case. 11 U.S.C. § 1141(d)(3).

Trustee fees by 28 U.S.C. § 1930(a)(6), as amended by Public Law 104–208, September 30, 1996. The creditors will have to raise this issue in their own behalf if they choose to pursue the matter.

Under the confirmed chapter 11 plan $1,500 per quarter or $500 per month of the debtor's salary, any additional bonus money he may receive for management of his equine assets under the terms of the contract with his employer, Equine Management Consultants, Inc., and any profit from the management of these assets over and above expenses, including the management fee of Equine Management Consultants, Inc., must be remitted to the disbursing agent for distribution to creditors. It is not at all clear at this point whether the U.S. Trustee will compute its fees on disbursements made by Equine Management Consultants, Inc. for expenses incurred in the management of the equine assets. If so, one of these expenses would be the debtor's salary. Imposition of the fee on disbursements made by the debtor from his salary for ordinary living expenses would result in double counting of the same disbursement. Consequently, the court is not persuaded the debtor's income presently is jeopardized by imposition of the fees in question.

Moreover, the quarterly fees calculated on any such disbursements ultimately will come from monies remitted to the disbursing agent. The disbursing agent will be required to pay the fees before any distribution to creditors, which leads again to the conclusion that neither the debtor nor the disbursing agent have standing to raise the separation of powers question presented.[2]

Accordingly, the joint motion of the debtor and the disbursing agent to excuse them from payment of the quarterly U.S. Trustee fees reimposed by title 28 U.S.C. § 1930(a)(6), as amended, shall be overruled.

If the court were to reach the separation of powers constitutional issue, the court is inclined to believe the imposition of these quarterly user fees post confirmation is merely

collateral to the order of confirmation, as would be an increase in a debtor's federal or state income taxes or property taxes after confirmation of a plan. Thus, the court does not believe a serious constitutional question under the separation of powers doctrine can be presented.

### ORDER

In conformity with the memorandum opinion of the court this day entered, the joint motion of the debtor and the disbursing agent under the debtor's confirmed chapter 11 plan for an order determining they are not obligated to resume quarterly payments to the United States Trustee as mandated by title 28 U.S.C. § 1930(a)(6), as amended by Public Law 104–208 September 30, 1996, is hereby overruled.

This is a final and appealable order.

---

2. Perhaps the disbursing agent can raise this issue by filing a declaratory judgment action against the U.S. Trustee and all the creditors to whom he is to make disbursements under the

plan. But the court is satisfied that in his dual capacity as attorney for the debtor and disbursing agent he cannot raise this issue as a representative of such creditors.