**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| HYUN J. UM; THOMAS W. PRICE; PATRICIA A. PRICE, *Appellants*, v. SPOKANE ROCK I, LLC, *Appellee*. | No. 16-35753 D.C. No. 3:15-cv-05787-BHS OPINION |

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted May 17, 2018
Seattle, Washington

Filed September 14, 2018

Before: Marsha S. Berzon and Andrew D. Hurwitz, Circuit Judges, and Raymond J. Dearie,<sup>*</sup> District Judge.

Opinion by Judge Hurwitz

---

<sup>*</sup> The Honorable Raymond J. Dearie, United States District Judge for the Eastern District of New York, sitting by designation.

## SUMMARY**

### Bankruptcy

The panel affirmed the district court's affirmance of the bankruptcy court's summary judgment denying discharge, under 11 U.S.C. § 1141(d)(3), of two individual Chapter 11 debtors' debt arising from a state-court judgment for fraud and misrepresentation.

The panel affirmed, albeit on somewhat different grounds, the district court and bankruptcy court's conclusion that the debtors, co-founders of several real-estate management companies, were not entitled to discharge of the debt. The panel concluded that the Chapter 11 plan provided for the liquidation of all or substantially all of the property of the bankruptcy estate under § 1141(d)(3)(A). The panel also concluded that the debtors did not engage in business after consummation of the Chapter 11 plan, under § 1141(d)(3)(B), because they were simply employees in businesses owned or operated by others. The panel held that, assuming § 1141(d)(3) does not require that the debtor engage in a pre-petition business, the statute is not satisfied by mere employment in someone else's business after consummation of a Chapter 11 plan.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

J. Todd Tracy (argued) and Steven J. Reilly, The Tracy Law Group PLLC, Seattle, Washington, for Defendants-Appellants.

Charles R. Ekberg (argued), Ryan P. McBride, and Laura Marquez-Garrett, Lane Powell PC, Seattle, Washington, for Plaintiff-Appellee.

## OPINION

HURWITZ, Circuit Judge:

Confirmation of a Chapter 11 plan of reorganization generally discharges a petitioner from pre-confirmation debts. 11 U.S.C. § 1141(d)(1)(A). But, under 11 U.S.C. § 1141(d)(3), a debt is not discharged if:

> (A) the plan provides for the liquidation of all or substantially all of the property of the estate;

> (B) the debtor does not engage in business after consummation of the plan; and

> (C) the debtor would be denied a discharge under section 727(a) of [the Bankruptcy Code] if the case were a case under chapter 7 [of the Bankruptcy Code].

The central issue in this case is whether two individual Chapter 11 debtors engaged in business after consummation of a Chapter 11 plan. The bankruptcy court held that they did

not and were therefore not entitled to discharge a debt arising out of a state-court judgment for fraud and misrepresentation; the district court agreed. So do we, albeit on somewhat different grounds than those relied upon by the bankruptcy and district courts, and we therefore affirm.

## I.  Background

Hyun Um and Thomas Price ("Debtors") co-founded several real-estate management companies. They filed separate petitions in 2010 seeking reorganization under Chapter 11 of the Bankruptcy Code; the petitions were later consolidated. The bankruptcy court eventually approved the Trustee's First Amended Disclosure Statement ("Disclosure Statement") and First Amended Plan of Reorganization ("the Plan"), which provided for the sale of all of the Debtors' nonexempt individual assets and those of their jointly-owned business entities.

Before the Chapter 11 filings, Spokane Rock, LLC had obtained a state-court judgment against the Debtors for fraud and misrepresentation. Spokane Rock filed an adversary complaint in bankruptcy court, alleging that its claims arising out of the judgment were nondischargeable pursuant to 11 U.S.C. § 523(a)(3) because the Debtors had failed to provide it with notice of the bankruptcy proceedings and had fraudulently concealed Spokane Rock's claim. After the adversary complaint was dismissed as untimely, Spokane Rock filed a second complaint seeking to deny a discharge, this time invoking 11 U.S.C. § 1141(d)(3).

The bankruptcy court granted summary judgment to Spokane Rock and denied a discharge of the Spokane Rock debt. *Spokane Rock I, LLC v. Um* (*In re Um*), Ch. 11 Case Nos. 10-46731, 10-46732, Adv. No. 14-04311, 2015 WL 6684504, at *9 (Bankr. W.D. Wash., Sept. 30, 2015)

("Bankr. Op.").[1] The Debtors appealed to the district court. They conceded that they would not have been entitled to a discharge of the Spokane Rock debt had they sought relief under Chapter 7, and that § 1141(d)(3)(C) was therefore satisfied. But the Debtors argued that the other two requirements for denying a discharge under § 1141(d)(3) were not met, because (a) the Chapter 11 plan did not call for liquidation of all or substantially all of the property of the estate, and (b) they continued to engage in business after consummation of the plan: Um by finding employment with Radiance Capital Financial, LLC, and Price by finding employment with the Plan Administrator, who was liquidating the Debtors' assets.

The district court affirmed the bankruptcy court's summary judgment. We review that decision de novo. *See Suncrest Healthcare Ctr. LLC v. Omega Healthcare Inv'rs, Inc.* (*In re Raintree Healthcare Corp.*), 431 F.3d 685, 687 (9th Cir. 2005).

## II. Discussion

### A. 11 U.S.C. § 1141(d)(3)(A)

The Debtors first contend that they are entitled to a discharge because the approved Plan did not provide for "the liquidation of all or substantially all of the property of the estate." 11 U.S.C. § 1141(d)(3)(A). The bankruptcy and district courts correctly rejected that argument. The Plan is explicitly termed "a liquidation Plan," under which the

---

[1] The Chapter 11 petitions were filed on behalf of the Debtors and their spouses. The bankruptcy court also granted summary judgment against Ms. Price but denied summary judgment against Ms. Um. Bankr. Op., 2015 WL 6684504, at *9. The parties then stipulated to dismissal of the claims against Ms. Um.

Administrator "shall be solely responsible for . . . liquidating or otherwise reducing the Estate's Assets to Cash." Bankr. Op., 2015 WL 6684504, at *2. As the bankruptcy court noted, under the Plan, "the Debtors do not retain any of the estate assets other than those exempted." *Id.* at *4.

The Debtors nonetheless contend that the Plan does not satisfy § 1141(d)(3)(A) because it does not provide for the sale of their membership interests in various limited liability corporations ("LLCs"). But, as the bankruptcy court correctly observed, the Plan expressly notes that these membership interests will be worthless after consummation of the Plan, because all of the assets of the LLCs will have been sold to third parties. *Id.* at *3–4.[2] The Debtors provided no evidence to rebut the Trustee's conclusion that the membership interests will be worthless after the confirmation of the Plan.

---

[2] The Debtors cite a 2014 statement by the Trustee that he was analyzing the operating statements of each of the entities at issue to understand their valuations, and suggest that the membership interests might again have value in the future. However, the Trustee subsequently concluded that the membership interests were worthless. *See* Disclosure Statement (noting that "Debtors' membership interest in Prium is worthless"; "the effect of the Prium Companies, LLC bankruptcy effectively makes PPM unsaleable and worthless on a going forward basis"; and "the Trustee anticipates that he will have liquidated all the real property owned by QHFH and its subsidiaries by or shortly following the Effective Date").

The bankruptcy court also correctly rejected the Debtors' argument that "their pledge of post-petition income negates a finding that" this Plan provided for liquidation, because the payment is expected only to "the extent necessary for execution of the Plan." Bankr. Op., 2015 WL 6684504, at *5.

Nor does the Trustee's management of the assets of the subsidiary LLCs pending their sale render the Plan anything other than a liquidation. As the bankruptcy court aptly noted, this feature is in "the very nature of a complex chapter 11 liquidation," *id.* at *5, which the Ninth Circuit Bankruptcy Appellate Panel has observed is designed to allow the debtor "the ability to plan for an orderly divestiture of the assets over time," *U.S. Internal Revenue Serv. v. Deer Park, Inc. (In re Deer Park, Inc.*), 136 B.R. 815, 818 (B.A.P. 9th Cir. 1992), *aff'd*, 10 F.3d 1478 (9th Cir. 1993). We therefore agree with the bankruptcy court's determination that the Plan satisfies the liquidation requirement of § 1141(d)(3)(A).

### B. 11 U.S.C. § 1141(d)(3)(B)

Chapter 11 was originally designed to deal with corporate debtors. *See Toibb v. Radloff*, 501 U.S. 157, 162–63 (1991). Indeed, the Supreme Court did not clarify until 1991 that an individual consumer debtor could seek Chapter 11 reorganization. *Id.* at 160–61.

The application of the "engage in business" requirement of § 1141(d)(3)(B) to corporate debtors is therefore relatively straightforward. As the district court noted, "it is easy to conclude that a business entity will not engage in business post bankruptcy when its assets are liquidated and the entity is dissolved." *Spokane Rock I, LLC v. Um*, Ch. 11 Case No. C15-5787-BHS, Adv. No. 14-4311-PBS, 2016 WL 7714141, at *3 (W.D. Wash. Aug. 18, 2016) ("District Court Opinion"); *see also Williams v. U.S. Bancorp*, No. CV-06-197-LRS, 2008 WL 4279409, at *4 (E.D. Wash. Sept. 12, 2008) ("Thus, a corporation that does not continue in business after plan confirmation does not receive a discharge."); *Teamsters Pension Tr. Fund of Phila. & Vicinity v. Malone Realty Co.*, 82 B.R. 346, 349 (E.D. Pa. 1988) (holding that a corporation "that is both liquidating

and discontinuing its business does not receive a discharge when its plan is confirmed").

How to apply § 1141(d)(3)(B) to an individual debtor is a less clear-cut inquiry, because the individual debtor continues in existence after consummation of the plan. The bankruptcy court concluded that the Debtors did not engage in business after consummation of the Plan for purposes of § 1141(d)(3)(B) because they would "no longer engage in their prepetition business, which was to manage specific LLCs and their properties." Bankr. Op., 2015 WL 6684504, at *7. The court noted that the legislative history describes § 1141(d)(3)(B) as applying "if the business, if any, of the debtor does not continue." *Id.* at *5 (quoting H.R. Rep. No. 95-595, at 418 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6375). The bankruptcy court thus read the provision as referring "to the *continuation* of a debtor's prepetition business," and found that requirement not satisfied "by the temporary part-time employment of Mr. Price by the Plan Administrator or the employment of Mr. Um by an unrelated party." *Id.* at *7 (citation omitted). In so holding, the bankruptcy court also relied on the unpublished decision of the only other circuit court to have considered this issue, which interpreted § 1141(d)(3)(B) as referring to a debtor's pre-petition business. *See Grausz v. Sampson* (*In re Grausz*), 63 F. App'x 647, 650 (4th Cir. 2003) (per curiam) (concluding that a doctor who went on to work "as a consultant for a business unrelated to the entities at issue in the bankruptcy" did not engage in business for purposes of § 1141(d)(3)(B), because the statute "does not refer to basic employment by an individual debtor but to the continuation of a pre-petition business" (emphasis omitted)); *see also Suarez v. Suarez* (*In re Suarez*), Ch. 11 Case No. 91-20276, Adv. No. 92-2009, 2007 WL 7024926, at *3 (Bankr. S.D. Ga. Feb. 8, 2007) (finding that a liquidating Chapter 11

debtor was engaged in business because he continued his preexisting medical practice after consummation of the reorganization plan). The district court agreed with this interpretation of § 1141(d)(3)(B). *See* Dist. Ct. Op., 2016 WL 7714141, at *3–4.

Whatever the merits of the reading of § 1141(d)(3)(B) by the bankruptcy and district courts, we need not determine today whether the statutory prohibition on discharge is triggered only when an individual debtor continues a pre-petition business after consummation of a Chapter 11 plan. The Debtors in this case fail to satisfy the second prong of the statute because they did not engage in *any* business during the relevant period. They were simply employees in businesses owned or operated by others—and Price a part-time employee at that.[3]

The Debtors argue that all employees necessarily "engage" in some respect in the business of their employers. But no court has ever read § 1141(d)(3)(B) as being satisfied by mere employment. *See In re Owens*, 207 B.R. 520, 526 n.1 (Bankr. E.D. Ky. 1996) (denying a discharge because "the individual debtor has not continued in business but rather is now an employee"). Nor did the drafters of the Bankruptcy Rules contemplate that the phrase "in business" included mere employment. The Statement of Financial Affairs form that Price and Um filed with their petition for bankruptcy protection provides as follows:

> An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding

---

[3] We assume without deciding that the Trustee's activities in liquidating the assets of the estates qualifies as a "business."

the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time.

An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, *other than as an employee*, to supplement income from the debtor's primary employment.

Fed. R. Bankr. P. Official Form 7 (2010) (emphasis added).

This definition comports with our common understanding of what it means to "engage in business." *See Williams v. Taylor*, 529 U.S. 420, 431 (2000) ("We give the words of a statute their 'ordinary, contemporary, common meaning,' absent an indication Congress intended them to bear some different import." (quoting *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997) (quotation marks omitted))). One would not ordinarily refer to cashiers employed by a grocery store as *engaging* in the grocery business; rather, it is more natural to consider those workers as being employed by a grocery business.

More importantly, the phrase "engage in business" in § 1141(d)(3)(B) must be read in "the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also El Paso Props. Corp. v. Gonzalez* (*In re Furr's Supermarkets, Inc.*), 283 B.R. 60, 69 (B.A.P. 10th Cir. 2002) (concluding that provisions of the Bankruptcy

Code must be read "in context with the whole Bankruptcy Code and not in isolation"); *United Food & Commercial Workers Union, Local 211 v. Family Snacks, Inc.* (*In re Family Snacks, Inc.*), 257 B.R. 884, 899–900 (B.A.P. 8th Cir. 2001) (collecting cases). Reading § 1141(d)(3)(B) to include mere employment would create severe dislocations in the broader statutory scheme.

As the Debtors concede, had they filed for protection under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 727(a) would have barred the discharge of the fraud judgment obtained by Spokane Rock. Interpreting § 1141(d)(3)(B) to allow a liquidating Chapter 11 debtor to obtain a discharge for debts incurred by fraud simply by accepting employment after plan consummation would effectively vitiate § 727(a). Knowing that any debts incurred through fraud would be discharged if they obtained any type of employment after plan consummation, debtors who intended to liquidate their assets would always choose Chapter 11 over Chapter 7. Put differently, a Chapter 7 debtor would be significantly disadvantaged relative to an identically situated Chapter 11 debtor. The former would continue to be responsible for fraudulently incurred debts after liquidating the property of the estate and accepting employment, while the latter would not. Therefore, whatever the precise boundaries of the phrase "engages in business" in § 1141(d)(3)(B) may be, it cannot be interpreted to include mere employment in an enterprise owned and operated by others without creating anomalies in the Bankruptcy Code as a whole. *See* Kathleen K. Coghlan, Bankruptcy, *in* 28 Washington Practice Series § 9.117 (2017) (noting that § 1141(d)(3) "prevents an individual debtor from making an 'end run' around § 727 by filing a liquidating Chapter 11"); C. Richard McQueen & Jack F. Williams, Tax Aspects of Bankruptcy. Law § 1:57 (3d ed. 2018) ("These limitations are necessary so that an individual

debtor may not employ a Chapter 11 liquidation plan to evade the objections to discharge embodied in Bankruptcy Code §§ 523(a) and 727(a).").

We hold that, assuming that § 1141(d)(3)(B) does not require that the debtor engage in a pre-petition business, it is not satisfied by mere employment in someone else's business after consummation of a Chapter 11 plan. The Debtors are not entitled to a discharge of the Spokane Rock debt.

## III.    Conclusion

We **AFFIRM** the judgment of the district court.